UNITED STATES of America,
Appellee,

v.

Dominic ALESSIO, Appellant.

Nos. 73–2904, 74–1550.

United States Court of Appeals,
Ninth Circuit.

Jan. 14, 1976.

Rehearing and Rehearing En Banc
Denied Feb. 24, 1976.

Thomas P. Nugent (argued), of Haskins, Lewis, Nugent & Newnham, San Diego, Cal., for appellant.

Richard S. Stolker, Atty. (argued), U. S. Dept. of Justice, Washington, D. C., for appellee.

## OPINION

Before MERRILL and GOODWIN, Circuit Judges, and WOLLENBERG,* District Judge.

WOLLENBERG, District Judge:

Appellant Dominic Alessio and Anthony Santiago were charged in a three-count indictment returned December 7, 1972. Appellant was charged in Count One with having given items of -value to Santiago with the corrupt intent to influence official acts of Santiago, in violation of 18 U.S.C. § 201(b). Count Two charged appellant with giving these items of value to Santiago "for and because of official acts performed by and to be performed by" Santiago, in violation of 18 U.S.C. § 201(f). ·Count Three charged Santiago with receiving these same items of value "for and because of official acts" performed and to be performed, in violation of 18 U.S.C. § 201(g). Santiago pleaded guilty to Count Three and subsequently testified on behalf of the United States at appellant's trial. A jury acquitted appellant on the first count and convicted him on the second.

### FACTS

Anthony Santiago was Camp Administrator at the Lompoc Prison Camp (hereinafter "the Camp"), a minimum security institution for federal prisoners. Appellant's father John Alessio was an inmate at the Camp from approximately May 1971 until February 12, 1972, having been convicted of income tax evasion. As Camp Administrator, Santiago was in a position to confer upon inmates of the Camp certain benefits, including trips off the Camp premises.

In June 1971 Santiago and his family left for a vacation in Las Vegas and San Diego. During this vacation many hotel bills, restaurant bills, and other expenses incurred by Santiago were paid by appellant and by Maurice Friedman, another inmate at the Camp. Appellant's payments to, or on behalf of, Santiago form the basis of the bribery conviction.

A number of issues are raised on appeal, not all of which merit or will receive discussion. Appellant's principal claims are:

1) The government improperly failed to seek immunity for certain defense witnesses and the court improperly failed to grant the immunity in the absence of a motion from the government.

2) The evidence was insufficient to support the judgment.

3) The indictment was invalid because the prosecuting attorneys were not authorized to seek the indictment from the grand jury.

4) The jury was improperly exposed to prejudicial publicity during the trial.

None of these claims has merit, and the judgment will therefore be affirmed.

### IMMUNITY FOR PROSPECTIVE DEFENSE WITNESSES

Appellant's most interesting argument on appeal is that he was denied important Fifth and Sixth Amendment rights by the government's refusal to seek immunity for prospective defense witnesses pursuant to 18 U.S.C. § 6001 et seq. At

---

* Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

trial appellant unsuccessfully asked the government to invoke the immunity statute, *supra,* to compel the testimony of three witnesses whose testimony he claimed was crucial for his defense: Maurice Friedman, Daniel Morgan, a Camp correctional officer, and Roy Goddard, formerly a Camp case worker. It has repeatedly been held by this Court that the government may not be compelled to seek a grant of immunity for a prospective defense witness. *United States v. Bautista,* 509 F.2d 675, 677 (9th Cir. 1975); *Cerda v. United States,* 488 F.2d 720 (9th Cir. 1973); *United States v. Jenkins,* 470 F.2d 1061 (9th Cir. 1972). It was noted in *Earl v. United States,* 124 U.S.App.D.C. 77, 361 F.2d 531 (1966), however, that a defendant might be denied due process if the government uses its authority to seek immunity for its own witnesses, but declines to do so on behalf of the defendant. 361 F.2d at 534 n. 1. The problem was raised only hypothetically by the court in *Earl* because, like in *United States v. Bautista, supra,* the government had secured none of its own witnesses through a grant of immunity. In the present case the government sought and obtained immunity for one prosecution witness. Appellant claims the government's refusal to exercise on behalf of the defense its authority to seek immunity for witnesses denied him due process under the Fifth Amendment, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and denied him his Sixth Amendment right "[i]n all criminal prosecutions . . . to have compulsory process for obtaining witnesses in his favor . . . ." Further discussion of the facts is necessary to understand the Court's resolution of this issue.

Maurice Friedman, one of the persons whose testimony appellant hoped to obtain through a grant of immunity, was an inmate at the Camp. Friedman and appellant's father were close friends at the Camp; they roomed together and were frequently seen together. Appellant claims Friedman would have corroborated appellant's testimony that appel-

lant provided gifts and other amenities to Santiago solely at Friedman's request, that such requests are routinely made in the gaming industry Friedman and appellant were involved in, and that it was a common business practice in that industry to comply with such requests. Appellant's argument here is that the government's refusal to seek immunity to obtain Friedman's testimony denied appellant valuable exculpatory evidence because the testimony would have shown that the gifts and other amenities given Santiago by appellant were solely in response to requests from Friedman and not for or because of official acts to be done by Santiago as charged in the indictment.

Daniel Morgan, another person whose testimony appellant sought to obtain through a grant of immunity was a Camp correctional officer who appellant claims would have testified he twice took appellant's father on trips off Camp premises, that he had no knowledge that appellant's father was prohibited from traveling off Camp premises, and that in the past he had given other inmates the same allegedly favored treatment received by appellant's father.

Roy Goddard, the third prospective witness for whom appellant sought immunity, was a former Camp case worker who appellant claims would have testified that a furlough request made by appellant's father was processed in the normal manner and that appellant's father, therefore, did not receive special treatment from Camp officials.

■ It has long been recognized that the Executive Branch of government "has exclusive authority and absolute discretion to decide whether to prosecute a case . . . ." *United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974), and authorities cited therein; *Smith v. United States,* 375 F.2d 243 (5th Cir. 1967), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). The right to compulsory process under the Sixth Amendment must be exercised consistent with the government's power to determine .

**1082**

which cases will be prosecuted. This power has its roots in the Executive's constitutional duty to take care that the laws of the United States be faithfully executed. U.S.Const. Art. II, Sec. 3; *United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965), *cert. denied sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). To interpret the Fifth and Sixth Amendments as conferring on the defendant the power to demand immunity for co-defendants, potential co-defendants, or others whom the government might in its discretion wish to prosecute would unacceptably alter the historic role of the Executive Branch in criminal prosecutions. Of course, whatever power the government possesses may not be exercised in a manner which denies the defendant the due process guaranteed by the Fifth Amendment. The footnote in *Earl v. United States, supra,* on which appellant relies heavily says no more than this. The key question, then, is whether appellant was denied a fair trial because of the government's refusal to seek immunity for defense witnesses.

[4] We are not convinced that appellant was denied a fair trial in this case. The testimony sought by appellant was cumulative of the testimony of other witnesses. The jury had before it all the facts and claims appellant intended to elicit from the witnesses for whom he sought immunity. The trial was not rendered unfair because of the absence of these witnesses' testimony, and appellant was therefore not denied due process.

*SUFFICIENCY OF THE EVIDENCE*

Appellant claims the evidence was insufficient to show a violation of 18 U.S.C. § 201(f) and that the language of the statute failed to advise appellant of what conduct would constitute a violation. The acts charged in the indictment in this case are a violation of the federal bribery statute that was revised in 1962. Section 201(f) has consistently been interpreted as not requiring a quid pro quo before payments to officials are unlawful.

■ In *United States v. Barash,* 412 F.2d 26 (2d Cir. 1969), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969), the Court of Appeals for the Second Circuit held it was a violation of Section 201(f) for a tax attorney representing clients in audits before the Internal Revenue Service to make payments to tax auditors, "whether the payments were made because of economic duress, a desire to create a better working atmosphere, or [in] appreciation for a speedy and favorable audit." 412 F.2d at 29. Clearly, the intent necessary to establish a violation of this section may be present whether or not there was an agreement between appellant and Santiago regarding particular acts Santiago had performed or would perform. To support the jury's verdict the evidence must show that something of value was given "a public official . . . for or because of any official act performed or to be performed by such public official . . . ." 18 U.S.C. § 201(f). An " 'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit." 18 U.S.C. § 201(a).

■ The evidence overwhelmingly supports the conviction of appellant under these standards. The jury could properly conclude from the testimony at trial that appellant knew Santiago was in a position to use his authority in a manner which would affect the conditions of confinement of appellant's father. The jury could fairly conclude from the record herein that things of value were given Santiago by appellant "for or because of" Santiago's exercise of that authority; that is, "for or because of any official act performed or to be performed by" Santiago. The evidence is sufficient to establish that things of value were furnished Santiago "otherwise than as provided by law for the proper discharge of official duty". 18 U.S.C. § 201(f). The evidence supports the jury's conclusions as to intent

and the substantive elements of the offense.

■ We reject appellant's claim that the language of the statute fails to advise persons of what acts the statute forbids. The language of the statute clearly and adequately expresses its purposes. *United States v. Irwin,* 354 F.2d 192, 196 (2d Cir. 1965). Accordingly, the statute as applied here is not constitutionally vague.

### PROSECUTORS' AUTHORITY TO SEEK INDICTMENT

■ Appellant claims the District Court erred by failing to dismiss the indictment on the basis of the government's alleged violation of Rule 6(d) of the Federal Rules of Criminal Procedure. He argues that the prosecutors who presented his case to the grand jury which returned the indictment were not "attorneys for the government" within the meaning of that rule and that the indictment returned was therefore invalid.

The principal basis for appellant's argument is that 28 U.S.C. § 515 should be strictly construed against enlarging the number of persons with access to grand juries on behalf of the government and that the authorizations of the special prosecutors in this case were insufficient under the rationale of *United States v. Crispino,* 392 F.Supp. 764 (S.D.N.Y.1975). That case has been reversed without opinion by the Second Circuit. 517 F.2d 1395 (1975). Appellant's arguments must be rejected in light of *In re Subpoena of Persico,* 522 F.2d 41 (2d Cir. 1975), and *United States v. Wrigley,* 520 F.2d 362 (8th Cir. 1975). The motion to dismiss the indictment was properly denied.

### JURY EXPOSURE TO PUBLICITY DURING TRIAL

■ In a consolidated appeal, appellant challenges the trial judge's denial of a motion for a new trial based on the alleged circulation and discussion in the jury room of prejudicial newspaper articles. Whether a new trial should be granted on this basis is a matter within the discretion of the trial judge and must turn on all the facts and circumstances of each case. *Marshall v. United States,* 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). The question here is whether the information which allegedly reached the jury was so prejudicial that appellant was denied a fair trial. *See* American Bar Association, Standards Relating to Fair Trial and Free Press §§ 3.4(b) and 3.5(f) (Approved draft 1968).

The Court has read each of the newspaper articles which, according to appellant, appeared in Los Angeles area newspapers and could have prejudiced the jury. In our view, these articles are not so inflammatory or prejudicial that they would have interfered with the jury's ability to render a fair verdict based on the evidence before them. The trial judge conducted several hearings during which the jurors and alternates were questioned about their exposure to this publicity, and his decision to deny the motion for new trial was not an abuse of discretion.

### CONCLUSION

None of the issues raised by appellant has merit. The jury's verdict was supported by the evidence, and we find no error in the rulings of the trial judge. Accordingly, the conviction is

Affirmed.