**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rowena Owen GARNER,
Defendant-Appellant.**

**Nos. 79–1805, 80–1147.**

United States Court of Appeals,
Ninth Circuit.

Argued April 14, 1981.

Submitted April 24, 1981.

Decided Sept. 14, 1981.**

Rehearing and Rehearing En Banc
Denied Nov. 16, 1981.

** Lodged with Clerk August 24, 1981.

Burton Marks, Los Angeles, Cal., for defendant-appellant.

Edward R. J. Kane, Asst. U. S. Atty., Reno, Nev., for plaintiff-appellee.

Before WALLACE and SCHROEDER, Circuit Judges, and CRAIG,* District Judge.

* Honorable Walter E. Craig, United States District Judge, District of Arizona, sitting by designation.

WALLACE, Circuit Judge:

Rowena Garner (Rowena) appeals from a judgment of conviction by jury verdict on one count of wire fraud, 18 U.S.C. § 1343, and aiding and abetting wire fraud, 18 U.S.C. § 2, and one count each of interstate travel and transportation of money in furtherance of an unlawful activity, 18 U.S.C. §§ 1952 & 2314, and aiding and abetting the same. The following issues are raised in this appeal: (1) whether the trial court was without jurisdiction to proceed to trial after Rowena filed a pretrial notice of appeal;[1] (2) whether the wire fraud conviction must be reversed because the government failed to prove a telephone call in furtherance of the scheme to defraud; (3) whether there was sufficient evidence to sustain Rowena's convictions for aiding and abetting wire fraud and interstate travel; (4) whether the failure of the district court to grant immunity to Roy Garner (Roy) deprived Rowena of due process; and (5) whether the district judge's denial of Rowena's motion to dismiss the indictment for grand jury irregularities and his refusal to order inspection of grand jury records was error. We affirm.

I

Rowena was involved with Roy, her husband, and with Dennis and Curry, in a scheme to cheat at blackjack at Harrah's Casino in Lake Tahoe, Nevada. The cheating took place on September 30, December 27, and December 28, 1974. The Garners and Dennis practiced playing blackjack at Dennis's home in Oxnard, California, and at the Garners' home in Reno. Prior to the September 30 session, they practiced for approximately one and one-half hours.

Rowena dealt, while Dennis played the two middle hands and Roy played the third hand. During the practice, Roy would signal to Dennis. He would raise his card or stroke the side of his head to indicate to Dennis the appropriate play. They practiced again at the Garner home before Dennis's December sessions with the Garners.

Roy had also involved Curry, the casino manager at Harrah's. Roy would give Curry decks of marked cards to put into play at the tables where he was playing.

Roy played with Dennis at Harrah's on September 30 and December 28, 1974. Rowena did not play on either occasion. In November and December of 1974, Roy played at Harrah's with a person referred to as "Wilma Rogers." Dennis identified Rowena as Wilma Rogers, even though both Curry and the dealer who dealt blackjack to Wilma Rogers in November, 1974 were unable positively to identify Rowena as Wilma.

Rowena's conviction for wire fraud and interstate travel was based on alleged telephone conversations between Roy and Dennis in December of 1974, and upon Dennis's travel from California to Nevada to play blackjack.

II

The first issue that we must address in this appeal is whether the district court had jurisdiction to proceed with the trial of Rowena after her pretrial notice of appeal had been filed. Rowena filed a motion to dismiss the indictment for grand jury irregularities. The motion was denied and Rowena filed a timely notice of appeal on the day the trial commenced.[2]

---

1. Even though neither party raised this issue on appeal, we requested supplemental briefing because the issue presented a jurisdictional question.

2. The following conversation took place between the district judge, Rowena's attorney, Marks, and the government's attorney, Coon, immediately prior to opening statements:

The Court: We will now bring in the jury, Mr. Bailiff.

Mr. Marks: Well, your Honor, might I address the Court?

The Court: No, I want the jury brought in at this time. All motions that have been pending are disposed of. We will now proceed.

Mr. Marks: Well, your Honor, I respectfully submit—

Mr. Coon: I have a motion that was left on my desk, your Honor.

Mr. Marks: Not a motion, a notice of—

The Court: We are going to go ahead with this matter. Some sort of notice of appeal has been sent to my office and they are studying it, but we are going to proceed with

We have recently held that a pretrial order denying a motion to dismiss an indictment because of grand jury irregularities is not appealable. *United States v. Garner,* 632 F.2d 758, 766 (9th Cir. 1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). At the time the district judge proceeded with the trial, however, it was unclear whether a pretrial appeal could be taken from such an order. The question is whether the district court has power to proceed until the appeal is acted upon by the court of appeals.

In *Moroyoqui v. United States,* 570 F.2d 862 (9th Cir. 1977), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 86 (1978), the defendant "lodged" an appeal following a denial of his motion to dismiss on double jeopardy grounds. Apparently because of the pendency of *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the defendant decided that the appeal would be lodged, but that no attempt would be made to pursue it further at that time. During the appeal from his conviction, the Supreme Court held in *Abney* that an order denying a motion to dismiss on double jeopardy grounds was a final decision and therefore appealable under 28 U.S.C. § 1291. Based upon *Abney,* we set aside the defendant's conviction and held that: "when petitioner 'lodged' his appeal from the trial court's denial of his claim, jurisdiction was conferred upon the court of appeals. As a consequence the trial court was without power to proceed with the trial." *Moroyoqui v. United States, supra,* 570 F.2d at 864.

In another line of cases, however, we have held that the district court does retain some jurisdiction after a notice of appeal has been filed. In *Ruby v. Secretary of United States Navy,* 365 F.2d 385 (9th Cir. 1966) (en banc), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967), we held that if a notice of appeal is invalid, the district court retains jurisdiction and may ignore it. In *Ruby,* a motion to dismiss a

complaint was granted on June 17. A notice of appeal from the order was filed on July 14. The judgment dismissing the action was entered on August 3. No further notice of appeal was filed. We held that the premature notice of appeal did not deprive the trial court of jurisdiction to enter the judgment. *Id.* at 389. Although the notice was ineffective to affect the trial court's jurisdiction, it did become effective when the appealable judgment was finally entered. We stated that:

> The only thing that is accomplished by a proper notice of appeal is to transfer jurisdiction of a case from a district court to a court of appeals. If, by reason of defects in form or execution, a notice of appeal does not transfer jurisdiction to the court of appeals, then such jurisdiction must remain in the district court; it cannot float in the air.
>
> *Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a nonappealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction.* If the district court is in doubt as to whether the notice of appeal is inoperative by reason of some such defect, it may decline to act further until the purported appellee obtains dismissal of the appeal in the court of appeals. In the rare instance where the district court proceeds with a case under the mistaken belief that notice of appeal is inoperative, the appellant may apply to the court of appeals for a writ of prohibition.

*Id.* at 388–89 (emphasis added). We have followed the reasoning of *Ruby* in subsequent cases. *United States v. Burt,* 619 F.2d 831, 835–36 (9th Cir. 1980); *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1101 (9th Cir. 1971).

We interpret *Moroyoqui* as consistent with *Ruby* by reading *Moroyoqui* as

---

the trial at this time. Please bring in the jury. As soon as we can we will try to dispose of that matter, such questions as may be raised by the notice filed.

Mr. Marks: Your Honor, I submit the Court is without jurisdiction to proceed any further with that.

The Court: All right, we'll deal with that.

holding that once a petitioner has filed an appeal of an order that is appealable, such as the claim based upon double jeopardy in *Moroyoqui*, jurisdiction is conferred immediately upon the court of appeals. When there is a deficiency in the notice of appeal for whatever reason, however, the district court is not deprived of jurisdiction. Here there was such a deficiency because the order denying Rowena's motion to dismiss the indictment due to grand jury irregularities was nonappealable. *United States v. Garner, supra*, 632 F.2d at 766. Thus, the trial court maintained jurisdiction to proceed with the trial.

## III

Rowena first challenges the sufficiency of the evidence. A jury verdict must be sustained on appeal if there is substantial evidence to support it. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974). We respect the exclusive province of the jury to determine the credibility of the witnesses and to resolve evidentiary conflicts. We must determine: "whether the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt." *United States v. Ramos*, 558 F.2d 545, 547 (9th Cir. 1977), *quoting United States v. Nelson*, 419 F.2d 1237, 1242 (9th Cir. 1969).

### A.

■ Rowena argues that her wire fraud conviction must be reversed because the government failed to prove a telephone call in furtherance of the scheme to defraud as required by 18 U.S.C. § 1343. The government has the burden of proving the contents of the telephone conversation made in furtherance of the unlawful activity. *Osborne v. United States*, 371 F.2d 913, 927 (9th Cir.), *cert. denied*, 387 U.S. 946, 87 S.Ct. 2082, 18 L.Ed.2d 1335 (1967). However, circumstantial evidence is not inherently less probative than is direct evidence. *United States v. Green*, 554 F.2d 372, 375 (9th Cir. 1977).

The government attempted to meet its burden by producing records of numerous calls between the Garners' telephone and Dennis's telephone. In addition, Dennis testified that Roy called him in December and asked him if he received an invitation to play at Harrah's Club. When Dennis said he had, Roy replied, "We're going to play." That telephone call from the Garner telephone in Reno, Nevada, to Dennis in Oxnard, California, was shortly thereafter followed by Dennis's travel to Reno, where Dennis rehearsed the card cheating scheme with Rowena and her husband.

■ We find that the government has successfully met its burden. 18 U.S.C. § 1343 requires that the telephone call be made "for the purpose" of committing the unlawful activity. We are guided by the Supreme Court's interpretation of the mail fraud statute in our interpretation of the similar provision in the wire fraud statute. *United States v. Wolfson*, 634 F.2d 1217, 1220 (9th Cir. 1980). In *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), the Court held that the government may prove the use of the mails for the purpose of executing a scheme to defraud by showing that a defendant acted knowing that the use of the mails would follow in the ordinary course of business, or that, even when not intended, such use was reasonably foreseeable. *Id.* at 399, 94 S.Ct. at 648. In addition, the mailings need not be an essential part of the contemplated scheme, they need only be made for the purpose of executing the scheme. *Id.* at 400, 94 S.Ct. at 648; *United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). In the instant case, although the December phone call was not an essential part of the scheme, there was ample evidence to support the jury's conclusion that Roy made the call for the purpose of finding out if and when Dennis would be coming to Reno in order to execute the gambling scheme. That is sufficient for purposes of section 1343.

## B.

Next, Rowena argues that the evidence presented was insufficient to sustain her conviction for aiding and abetting wire fraud and interstate travel. She argues that the government showed two separate schemes: one involving Dennis and Roy, and one involving Rowena and Roy. She argues that the second scheme involved no interstate travel or telephone communication. Further, she argues that the only involvement shown between Dennis and herself, other than the fact that both of them played cards on different dates at Harrah's with Roy, is the evidence of the blackjack practice sessions.

We find the evidence of those practice sessions sufficient to sustain her conviction. We have held that aiding and abetting as used in 18 U.S.C. § 2 means to assist the perpetrators of a crime. *United States v. Lane*, 514 F.2d 22, 26 (9th Cir. 1975). In *Lane* we stated that:

In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni*, 2 Cir., 100 F.2d 401, 402.

*United States v. Lane, supra*, 514 F.2d at 26, *quoting Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949). There is sufficient evidence that Rowena participated extensively in the blackjack practice sessions. In particular, Dennis testified that at the December practice session, Rowena criticized Dennis for failing to follow Roy's signals properly.

Moreover, the government is not required to establish an interstate connection with respect to each defendant's activity. Rather, the government need only show that the scheme as a whole had substantial interstate connections. *United States v. Ryan*, 548 F.2d 782, 786 (9th Cir. 1976), *cert. denied*, 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977). We find that the scheme as a whole had sufficient interstate connections to convict Rowena.

## IV

Rowena argues that the district court's failure to grant immunity to Roy deprived her of due process, of the subpoena power of the court to present evidence on her behalf, and of her right to counsel. She argues that where the prosecution relies upon the testimony of immunized witnesses to establish its case, due process requires that immunity be afforded to defense witnesses in similar circumstances to those witnesses already given immunity. In support of her position, she relies upon a footnote in *Earl v. United States*, 361 F.2d 531, 534 n. 1 (D.C.Cir.1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). We have defined the question, however, as whether the defendant "was denied a fair trial because of the government's refusal to seek immunity for defense witnesses." *United States v. Alessio*, 528 F.2d 1079, 1082 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). In *Alessio*, we held that the government's refusal to grant immunity where it had immunized its own witnesses did not deny the defendant a fair trial because the testimony had already been presented to the jury through other witnesses. Thus, because the defendant was unable to demonstrate any prejudice resulting from the government's refusal to grant immunity, there was no denial of due process. *Id.*

In *United States v. Carman*, 577 F.2d 556 (9th Cir. 1978), we followed *Alessio* and found that the defendant must demonstrate that evidence favorable to him was actually suppressed. *Id.* at 561. No such evidence was presented by Rowena in the instant case. There is nothing in the record to indicate that Roy would have given testimony favorable to her. The record is also silent as to whether, if given immunity, Roy would have relied upon his spousal privilege and refused to testify anyway. *See Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

In addition, we agree with the government that Rowena failed to follow the prop-

er procedure. There is nothing in the record to indicate that she or her counsel ever requested immunity directly from the government. Instead, she made a motion in open court for use immunity, after Roy had asserted his Fifth Amendment privilege on the witness stand. The motion was denied by the trial court, with no position taken by the government. 18 U.S.C. § 6003, dealing with immunity in court and grand jury proceedings, has no provision for any party except the government to be the moving party for an immunity grant.[3] Thus, the proper procedure is for the defendant first to ask the government for immunity of a defense witness, and if the government refuses, then the defendant may petition the court for a grant of immunity.

## V

Rowena argues that the district court erred in failing to dismiss the indictment for grand jury irregularities. She argues that the district judge erroneously denied her motion to inspect grand jury records showing the attendance of jurors concurring in the finding of the indictment. She states that such disclosure was necessary because a quorum of the grand jurors voting to return the indictment had not directly heard the evidence to support the indictment.

■ The district judge did not abuse his discretion in denying Rowena's motion. When a duly constituted grand jury returns an indictment valid on its face, we have found that no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision. *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974). Here, the trial court ordered full disclosure of all testimony given before the grand jury. The record establishes that the grand jurors who voted for the indictment had before them a complete transcript of all testimony taken by the previous grand jurors regarding the matter. They also heard testimony summarizing the transcripts. We do not require that the prosecutor present live witnesses to the grand jury; it is sufficient if the prosecutor presents complete transcripts of the sworn testimony. *See United States v. Chanen*, 549 F.2d 1306, 1311 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). Further, the mere possibility that an absent juror might not hear any evidence on one of the counts is not a sufficient basis for attacking the indictment. *United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645, 648 (9th Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). An indictment is valid if: "(1) the grand jury returning the indictment consisted of between 16 and 23 jurors, (2) every grand jury session was attended by at least 16 jurors, and (3) at least 12 jurors vote to indict." *Id.* at 649. Because Rowena has failed to allege that any of these requirements were not met, the district court acted properly in refusing to dismiss the indictment.

## VI

■ Finally, Rowena argues that the district court's charge to the jury regarding the time and expense involved in the trial was improper. After the jury had deliberated for several hours, the district judge called the jurors back into the courtroom for purposes of ascertaining their ability to continue with deliberations. The jurors were instructed that they should "realize the expense of trial to everyone involved . . . ." The district judge went on to admonish the jury that it should "retire to the jury room and continue [its] deliberations

---

**3.** 18 U.S.C. § 6003(b) provides in part:

A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

and endeavor to reach a verdict if [it] can." [4]

Rowena argues that because the district court instructed the jury that it should consider the time and expense involved in the case, but failed to instruct the jurors not to surrender their honest views as to the guilt or innocence of the defendant, that the instruction does not fall within the language sanctioned by the Supreme Court in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We do not read *Allen* as specifically requiring such an admonition to the jury. In fact, the instruction given by the judge in the instant case was very similar to the instruction approved by us in *Walsh v. United States*, 371 F.2d 135 (9th Cir.), *cert. denied*, 388 U.S. 915, 87 S.Ct. 2130, 18 L.Ed.2d 1357 (1967). In *Walsh*, we upheld an instruction in which the district judge told the jurors to keep trying. *Id.* at 136. In that case, we did not require the district judge to instruct the jurors not to surrender their honestly held beliefs. Moreover, we do not find any evidence in the record indicating that the instruction affected the jury's verdict in any way. *See United States v. Beattie*, 613 F.2d 762, 764 (9th Cir.), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).

AFFIRMED.

---

4. The district judge instructed the jury as follows:

The one thing I do want to stress to the members of the jury, and if I am able to do this, I know you all realize the expense of trial to everyone involved in it, to both sides, to yourselves. I know that all of you realize the importance of the case to the defendant and to the Government, that it is an important case, that it be resolved. . . .

Well, I know you're fine people and doing the best you can, and I will ask you at this time to retire to the jury room and continue your deliberations and endeavor to reach a verdict if you can, and we'll stand by and see what progress is made.