**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert BRUTZMAN,
Defendant-Appellant.**

**No. 83–5036.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1984.

Decided May 1, 1984.

Richard Marmaro, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Joel Levine, Stilz, Boyd, Levine & Handzlik, Los Angeles, Cal., for defendant-appellant.

Before CHAMBERS, SNEED and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Brutzman was indicted on thirty-five counts of mail fraud in violation of 18 U.S.C. § 1341. The counts were severed into two groups for trial.[1] Brutzman was convicted in a jury trial of ten of the nineteen counts on which he was tried.[2] On appeal, Brutzman raises a number of issues, including the failure to grant immunity to a defense witness, limitation of cross-examination, the admission of evidence of the manner of Brutzman's use of misappropriated funds, procedural misconduct, the failure to give instructions, and failure to prove mailings for the purpose of executing a fraudulent scheme. We find no reversible error and therefore affirm the conviction.

## FACTS

In 1979 Robert Brutzman formed a company by the name of Morgan, Warner, Leeds & Rhodes (MWLR), which, among other things, packaged and sold tax shelter investments in trucks, computers and cattle. The investment package that formed the basis of the indictment offered investors an opportunity to purchase diesel trucks that would be leased to trucking companies and thereby qualify the investor for depreciation and investment tax credit. Each investor paid MWLR a consulting fee of approximately $3,000. MWLR assured investors that the fee would be placed in a separate trust account (the truck deposit trust account) and would be refunded in full if MWLR failed to produce the investment package promised. Out of the 450 investors in the program, only ten received a truck investment program. Only 115 received refunds of their consulting fees.

The proof at trial established that Brutzman transferred large amounts of money from the truck deposit trust account to the general business account for MWLR, over which he had exclusive control. He used the monies to pay advance commissions to salesmen notwithstanding the total lack of successful implementation of the program. In addition, he used the funds to cover working expenses of MWLR, purchase computers for a second investment program, give bonuses to employees notwithstanding the absence of money in the general account to cover the checks, and pay his own personal expenses. A substantial amount of money from the truck deposit trust account was transferred to Stuart Arnett, MWLR's attorney.

Brutzman maintains that he did no more than attempt to keep the business afloat. The jury did not agree. We find substantial evidence in the record to support the judgment of conviction and find no reversible error.

### 1. *Defense Witness Immunity*

■ The district court denied Brutzman's motion for immunity for his attorney, Arnett, a prospective defense witness whose testimony Brutzman claims was crucial for his defense. This court has emphatically rejected the argument that the

---

**1.** Counts one through nineteen, relevant here, involved a truck leasing tax shelter program. Counts twenty through thirty-five involved a computer leasing tax shelter program and alleged both mail fraud and securities fraud.

**2.** On a motion by the government, counts twenty through thirty-five were dismissed after the trial.

sixth amendment provides a defendant with a right to demand use immunity for defense witnesses who invoke their privilege against self-incrimination. *United States v. Alessio,* 528 F.2d 1079, 1081 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). The government has exclusive authority to decide if and when to prosecute. *Id.*

■ Although we agree with Brutzman that the government's authority to decide if and when to seek immunity for a witness must be exercised in a manner consistent with the due process guarantees of the fifth amendment, *Alessio,* 528 F.2d at 1082; *Government of Virgin Islands v. Smith,* 615 F.2d 964, 970 (3d Cir.1980), we do not believe that Brutzman was denied a fair trial in this case. Most of the testimony Brutzman sought was cumulative, and what was not cumulative was not exculpatory. This is not a case where two eyewitnesses have conflicting stories to tell, and the government seeks and obtains immunity for its own eyewitness while refusing to request immunity for defendant's eyewitness. Such an abuse would deny defendant any semblance of a fair trial. *See Earl v. United States,* 361 F.2d 531, 534 n. 1 (D.C.Cir.1966), *cert. denied,* 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967) (dictum). The jury had before it all the facts and claims that Brutzman intended to elicit from Arnett. The trial was not rendered unfair by the court's refusal to order the prosecutor to grant that witness immunity. *See Alessio,* 528 F.2d at 1082.

### 2. *Limitation of Cross-Examination*

■ Brutzman claims that the court abused its discretion in excluding evidence of an existing civil lawsuit between Brutzman and a co-defendant who testified for the government. We cannot agree. To avoid time-wasting exploration of collateral matters the trial court, in its discretion, may limit cross-examination. *United States v. Weiner,* 578 F.2d 757, 766 (9th Cir.) (per curiam), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). The trial court allowed defense counsel to establish the pendency of a civil lawsuit between Brutzman and the government's witness, McGarry, to show the witness' potential bias against the defendant. The court merely refused to admit into evidence the specific allegations of that civil complaint. We find no abuse in the trial court's precluding further exploration of the collateral issue.

### 3. *Admission of Evidence of Brutzman's Use of Misappropriated Funds*

The trial court admitted evidence of the manner in which Brutzman used substantial amounts of investors' monies to pay for various business and personal expenses. Brutzman claims that that evidence was intended to inflame the jury and, therefore, should have been excluded or at least should have been admitted only with a limiting instruction.

■ We cannot agree that the trial court abused its discretion in concluding that the probative value of the evidence was not outweighed by its potential prejudicial effect. The misuse of the funds directly established the fraudulent nature of the scheme. *See United States v. Krohn,* 573 F.2d 1382, 1388–89 (10th Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978).

■ Brutzman's argument on appeal that without a limiting instruction admission of the evidence was an abuse of discretion is unavailing. *United States v. Brickey,* 426 F.2d 680 (8th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970), upon which Brutzman relies, is inapposite for two reasons. First, the *Brickey* court did not hold that admission of such evidence in a mail fraud prosecution necessarily must be accompanied by a limiting instruction. It merely held that the court in that case properly limited the scope of the relevancy of the testimony. *Id.* at 686. Second, Brutzman did not request the instruction at trial. It was not "plain error" for the district court to fail to give a limiting instruction not requested by the defendant. *See* Fed.R.Crim.P. 52(b); *United*

*States v. Smith*, 520 F.2d 544, 549 (8th Cir.1975), *cert. denied*, 429 U.S. 925, 97 S.Ct. 328, 50 L.Ed.2d 294 (1976). *See also United States v. Wilson*, 690 F.2d 1267, 1273–74 (9th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983) (not plain error for district court to admit unobjected to evidence).

#### 4. *Prosecutorial Misconduct*

■ Brutzman claims that it was misconduct for the government to elicit testimony from Robert Marre to show that Brutzman misrepresented the business history of MWLR to investors when the government knew that Brutzman himself was misled by Richard Marre into believing the story he told. We cannot agree. MWLR was a company started by Brutzman in 1979. It was not a company with a long and illustrious history originating in Zurich during the war years as Brutzman would have investors believe, and Richard Marre did not mislead Brutzman into believing that history. The testimony of both Richard and Robert Marre was relevant to show the fraudulent nature of Brutzman's scheme.

■ Brutzman additionally claims that the government's depiction of Brutzman as one who intentionally avoided contact with disgruntled investors seeking refunds was misconduct when the government knew that the business was closed only after advice of counsel and issuance of a Cease and Desist Order by the California Corporations Commissioner. The evidence at trial revealed that MWLR ran out of money in December 1980. The record supports the trial court's conclusion that regardless of any advice of counsel or Cease and Desist Order, MWLR's financial situation forced its closure. We review a trial court's denial of a motion for mistrial under a clearly erroneous standard. *See United States v. Pruitt*, 719 F.2d 975, 978 (9th Cir.1983) (per curiam); *United States v. Ochoa-Sanchez*, 676 F.2d 1283, 1289 (9th Cir.1982), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1983). In the context of the record as a whole, we cannot say the trial court clearly erred in denying

the motion for a mistrial. Even if the prosecutor's questioning in either of these areas could be construed as misconduct, we are convinced that it did not deny Brutzman a fair trial. Any error was harmless. *See United States v. Pruitt*, 719 F.2d at 978; *United States v. Ochoa-Sanchez*, 676 F.2d at 1289.

#### 5. *Jury Instructions*

■ Brutzman contends that the trial court erred in refusing to give an advice of counsel instruction, a missing witness instruction, and an instruction on the inferences that may be drawn from the prosecutor's failure to produce evidence. On appeal, the adequacy of jury instructions is determined by examining the instructions as a whole. *United States v. Boekelman*, 594 F.2d 1238, 1240 (9th Cir.1979); *United States v. Lee*, 589 F.2d 980, 985 (9th Cir.), *cert. denied*, 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979). In view of all the instructions given, the court's refusal to give the three instructions sought by Brutzman was not an abuse of the court's wide discretion to determine the appropriateness of a specific instruction. *See United States v. Bramble*, 680 F.2d 590, 592 (9th Cir.1982), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1983).

■ The jury was fully instructed on the importance and effect of good faith in assessing the evidence against Brutzman. The trial court's refusal to give an additional advice of counsel instruction was not an abuse of discretion.

■ Brutzman's contention that the court abused its discretion in refusing to give a missing witness and failure to produce evidence instruction in relation to the government's failure to call Arnett as a witness lacks merit. The instructions Brutzman sought contemplate a situation where a witness is peculiarly within the power of one of the parties. *See United States v. Young*, 463 F.2d 934, 939 (D.C. Cir.1972). Arnett was not peculiarly within the power of the government. He invoked his privilege against self-incrimination, and

the government chose not to seek use immunity to obtain that testimony. Where a witness' unavailability results from an invocation of the privilege against self-incrimination, the witness is unavailable to both parties, and the court's refusal to give an absent witness instruction is proper. *United States v. Simmons*, 663 F.2d 107, 108 (D.C.Cir.1979) (per curiam); *Bowles v. United States*, 439 F.2d 536, 541–42 (D.C. Cir.1970) (en banc,) *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). Moreover, the jurors were instructed that they had latitude in evaluating and drawing inferences from the evidence presented at trial, and that they were not limited to the bare testimony of the witnesses. The jurors certainly heard testimony about Arnett and others who did not testify. They were aware that the prosecution had not called every person involved. The instructions given were more than adequate to assure Brutzman a fair trial.

### 6. *Mailings in Counts 14, 15 and 19*

 To prove a violation of the mail fraud statute, 18 U.S.C. § 1341, the government must prove that the accused (1) participated in a scheme or artifice to defraud, *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954), and (2) caused a use of the mails, *id.*, (3) "for the purpose of executing the scheme." *Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944). Brutzman argues that the third element is missing in counts 14, 15, and 19. He contends that the mailings by investors seeking refunds were subsequent to the completion of any scheme to defraud and therefore cannot form the basis of mail fraud convictions. *See United States v. Maze*, 414 U.S. 395, 402, 94 S.Ct. 645, 649, 38 L.Ed.2d 603 (1974); *Kann v. United States*, 323 U.S. at 93–95, 65 S.Ct. at 150–151. In both *Maze* and *Kann* the Court concluded that the mailings in question had no effect on the success or failure of the fraudulent scheme because the fraud was completed prior to the mailings. The mailings were immaterial to the scheme and therefore were not for the purpose of executing the scheme. Nei-

ther case, however, stands for the proposition that the chronology of the mailings is determinative. Letters mailed after the defrauders have received their money may be in furtherance of the fraudulent scheme, *United States v. Sampson*, 371 U.S. 75, 80–81, 83 S.Ct. 173, 175–176, 9 L.Ed.2d 136 (1962); *United States v. Galloway*, 664 F.2d 161, 163 n. 3 (7th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *United States v. Kent*, 608 F.2d 542, 546 (5th Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980), and letters mailed by victims to the defrauder can be mailings in execution of a fraud. *United States v. Toney*, 598 F.2d 1349, 1353 (5th Cir.1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

 The record here reveals that the letters from disgruntled investors seeking refunds were an integral part of the lulling aspect of Brutzman's scheme. The record is filled with evidence of MWLR's assurances that refunds would be available from the separate trust account containing the investors' monies. The victims' responses to those assurances were a foreseeable use of the mails that cannot be said to have been immaterial to the scheme.

In *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954), the Court stated:

> Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he "causes" the mails to be used. [citation omitted]

Brutzman set the forces in motion that foreseeably would involve use of the mails by his victims seeking the refunds he promised. The scheme depended upon the investors' belief that refunds were available if the tax shelter program failed. The mailings of refund requests satisfy the requirements of the mail fraud statute.

The conviction is AFFIRMED.