**Jimmie Wayne JEFFERS,**
**Petitioner–Appellant,**

v.

**James R. RICKETTS, Director, Arizona Department of Corrections; Donald Wawrzaszek, Superintendent, Arizona State Prison, Respondents–Appellees.**

**No. 86–1840.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1987.

Decided Nov. 9, 1987.

Donald S. Klein, Frank P. Leto, Tucson, Ariz., for petitioner-appellant.

Gerald R. Grant, Phoenix, Ariz., for respondents-appellees.

Before PREGERSON and CANBY, Circuit Judges and WILSON *, District Judge.

CANBY, Circuit Judge:

Jimmie Wayne Jeffers appeals the dismissal of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Jeffers' habeas petition challenges his convictions for assault with a deadly weapon and first degree murder and his sentence of death. We affirm in part, reverse in part, and remand for proceedings consistent with our opinion.

* The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

## FACTS AND PROCEDURAL HISTORY

Jeffers' was convicted of murdering Penelope Cheney and of assaulting Doris Van der Veer with a deadly weapon. Penelope Cheney had been Jeffers' girlfriend and had been arrested with Jeffers in May of 1976 on state charges of receiving stolen property. Jeffers had posted bail for Cheney, but had been unable to post bond for himself and remained in custody at the Pima County Jail. While in jail Jeffers received reports that Cheney had been cooperating with the police, providing information to them about Jeffers and certain heroin transactions. Jeffers wrote a note to another jail inmate offering him money if he would kill Cheney. The detention officer who was supposed to deliver the note read it and seized it. Jeffers was finally released on bail in early October.

Later that same month, Jeffers was living with Doris Van der Veer in the Linda Vista Motel in Tucson, Arizona. Jeffers sent a note to Cheney requesting that she meet with Jeffers. On October 20th Jeffers told Van der Veer that Cheney was coming over and asked her to leave while Cheney was there. Cheney arrived at the motel room when Jeffers and Van der Veer were there. The two women met briefly and Van der Veer then went outside, leaving Jeffers and Cheney in the room. Approximately two hours later Van der Veer returned to the motel room and knocked on the door. Jeffers opened the door. Jeffers had a gun in his hand; Cheney was lying on the bed and appeared to be cyanotic. While Van der Veer watched, Jeffers injected a liquid into Cheney's hand and said, "I have given her enough shit to kill a horse and this bitch won't die." Jeffers told Van der Veer, a former licensed practical nurse, to check Cheney. Cheney's heartbeat was faint, her breathing was labored, and a foamy fluid was coming out of her mouth. Van der Veer asked if appellant was going to help Cheney. He responded, "No, I'm going to kill her." Jeffers straddled Cheney's body and began choking her, first with his belt and then with his hands. After it appeared that she had died, Jeffers prepared another syringe and forced Van der Veer to inject heroin into Cheney's groin and hand. He also told Van der Veer to get on top of Cheney and choke her. He took photographs of both of these acts. Jeffers then got on top of Cheney and began beating her with his hands. As he did this, he called her a "bitch" and a "dirty snitch" and said, "This one is for [naming several names]." Jeffers finally dragged Cheney's body into the bathroom and put it in the shower.

The body remained in the shower for three days. When the body began to smell, Jeffers and Van der Veer wrapped it in garbage bags and put it in a sleeping bag. That night they put the body in the trunk of Van der Veer's car. Jeffers and Van der Veer took Cheney's body to a place near Sedona, Arizona, and buried it in a shallow grave.

On February 9, 1978, a jury found Jeffers guilty of first-degree murder and assault with a deadly weapon. The trial judge sentenced Jeffers to death on the first degree murder conviction. He also sentenced Jeffers to not less than 5 nor more than 10 years in prison on the assault conviction. Jeffers appealed from the judgments and the sentences imposed.

As a result of the appeal, Jeffers was resentenced on the murder conviction. On July 10, 1980, the trial court found two aggravating circumstances and no mitigating circumstances, and again imposed the death penalty. The Arizona Supreme Court affirmed both the convictions and the sentences. *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983). The sole aggravating circumstance upheld by the Arizona Supreme Court was that Jeffers had committed the murder "in an especially heinous ... or depraved manner." Ariz.Rev.Stat. Ann. § 13–703(F)(6). The Supreme Court of the United States denied certiorari. *Jeffers v. Arizona*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983).

On December 2, 1983, Jeffers filed a petition for writ of habeas corpus in the district court. He subsequently filed an amended petition and requested an evidentiary hearing. On Feb. 4, 1986, the district court denied Jeffers' motion for evidentiary

hearing and dismissed his petition. *Jeffers v. Ricketts,* 627 F.Supp. 1334 (D.Ariz.1986). Jeffers appealed to this court on Feb. 27, 1986.

## DISCUSSION

### A. *Issues*

Jeffers raises some 13 questions for our consideration. Because we find that Jeffers was unconstitutionally sentenced to death, we need not reach some of the issues he presents. The questions we address are:

1. Did the prosecutor's refusal to grant immunity to a defense witness, while granting immunity to four state witnesses, violate Jeffers' sixth amendment right to compulsory process, thereby denying due process?

2. Did certain evidentiary rulings at his trial deprive Jeffers of due process?

3. Did the introduction of evidence of other "bad acts" deny Jeffers a fair trial?

4. Was Jeffers denied due process of law when he made a single appearance before the jury in jail clothing?

5. Was Jeffers denied an impartial sentencing tribunal?

6. Was Arizona's standard of aggravation for murder committed in an "especially heinous ... or depraved manner" constitutionally applied to Jeffers?

### B. *Matters Concerning the Trial*

#### 1. *Refusal to grant immunity to defense witness*

Jeffers contends that refusal to grant immunity to a defense witness, when the state had previously offered and granted immunity to four state witnesses, violated Jeffers' sixth amendment right to compulsory process and denied him due process of law. The state granted immunity to Doris Van der Veer, Ramona Eppling, Sharon Galarza, and Rich Honton. The state refused to grant immunity to Louis Rosso, who was called to the stand to help Jeffers establish his alibi defense.

Denial of immunity for a defense witness can violate due process. *United States v. Lord,* 711 F.2d 887 (9th Cir.1983). The defendant is entitled to an evidentiary hearing if he makes "an unrebutted prima facie showing of prosecutorial misconduct that could have prevented a defense witness from giving relevant testimony." *Id.* at 891. In order to make a prima facie showing of prosecutorial misconduct, a defendant has the burden of showing, first, that the evidence was relevant and, second, that the prosecution deliberately intended to distort the judicial factfinding process by denying immunity to the defense witness. *Id.* (citing with approval *Government of Virgin Islands v. Smith,* 615 F.2d 964, 968 (3d Cir.1980)). Jeffers has not met his burden.

Jeffers testified that on the day that Cheney died, he was out making a heroin purchase. Earlier in that week Van der Veer and Jeffers had made a purchase from Louis Rosso. Van der Veer testified that on that occasion Rosso had sold Jeffers enough heroin to satisfy Jeffers' needs for several days. Her testimony therefore made Jeffers' alibi that he was out buying heroin somewhat less credible. According to Jeffers, Rosso would have testified that he had only sold Jeffers a small quantity of heroin. Although neither clearly exculpatory nor essential to the defense, Rosso's testimony would have been relevant, satisfying one element of the *Lord* test.

There is, however, no evidence whatsoever of prosecutorial misconduct. The defense did not make known until the middle of the trial that it intended to call Rosso. There is no suggestion that the prosecutor made any threat to Rosso that induced him to invoke the fifth amendment, as was prima facie shown to have occurred in *Lord,* 711 F.2d at 891. Nor is there any showing that the prosecution presented a distorted factual picture by immunizing its witnesses to testify to one side of a story while denying immunity to defense witnesses who would present the other side. *See United States v. Alessio,* 528 F.2d 1079, 1080–82 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976); *United States v. Paris,* 812 F.2d 471, 477

(9th Cir.1987). Jeffers' challenge therefore fails the second prong of the *Lord* test. *See · United States v. Disla,* 805 F.2d 1340, 1353 (9th Cir.1986). He has made no prima facie showing that the decision not to grant immunity to Rosso denied him a fair trial. We affirm the district court's decision on this issue.

### 2. *Evidentiary rulings*

Jeffers contends that evidentiary rulings in capital cases must meet a standard of "extra reliability." He draws support from the plurality opinion in *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), which stated that "[i]n capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability." *Id.* at ——, 107 S.Ct. at 2603, 91 L.Ed.2d at 347. Insofar as Jeffers' argument suggests that evidentiary rulings and their review are subject to a totally different methodology in capital cases from that in all other criminal cases, we do not accept it. We readily agree, however, that we must review capital cases with heightened concern for the reliability of the state court's procedures, *see Spaziano v. Florida,* 468 U.S. 447, 456, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340 (1984), because "the penalty of death is qualitatively different from a sentence of imprisonment, however long." *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion of Stewart, J.). Even by that standard, however, we find that none of the challenged state court evidentiary rulings amount to constitutional error.

### a. *Exclusion of Myron McRoberts' Testimony*

■ In order to show that only Van der Veer, and not Jeffers, was with Cheney at the time of her drug overdose and death, the defense called Myron McRoberts, a guest at the motel. He testified that he saw Van der Veer and a blonde woman (presumably Cheney) leave the motel together on the day in question. Among the reasons offered by McRoberts why he remembered the events on the day of Che-

ney's death, more than 14 months prior to his testimony, was that he was told "there [was] a cute blonde in room 7." The trial court excluded that statement, and Jeffers contends that the court erred. The Arizona Supreme Court held that the evidence was improperly excluded as hearsay, but that the error was harmless. We find no constitutional error. The evidence was cumulative of other testimony offered by McRoberts. Its exclusion will not support the granting of habeas corpus relief.

### b. *Prior "bad acts" involving Cheney*

■ Jeffers also contends that the trial court committed constitutional error when it admitted statements of Cheney through the testimony of Edith Meck, the manager of the apartment complex where Jeffers was living at the time, and of Nurse Ramirez, a nurse at Tucson Medical Center where Cheney went to be treated in November of 1975. Meck testified that Cheney said that Jeffers had drugged her and had thrown her through the bedroom window. Ramirez testified that Cheney said that her boyfriend had drugged her and that she had jumped through the bedroom window because she feared further violence from Jeffers. The Arizona Supreme Court held that the statement made to Meck was properly admitted under the excited utterance exception to the hearsay rule. It held that most of the statement made to Ramirez was properly admitted under the medical treatment exception. The comment that her boyfriend had drugged her was held improperly admitted, but harmless, because it was cumulative of the properly admitted statements made to Meck.

The inability to cross-examine the declarant Cheney did not deprive Jeffers of a fundamentally fair trial. *See Barker v. Morris,* 761 F.2d 1396 (9th Cir.1985), *cert. denied,* 474 U.S. 1063, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). The confrontation clause permits the introduction of out-of-court statements if they are both necessary and reliable. *Barker,* 761 F.2d at 1399. The statement was sufficiently reliable as an excited utterance. *See, e.g. State v.*

*Peeler,* 126 Ariz. 254, 614 P.2d 335 (Arix. App.1980). Moreover, Cheney's statements were partially corroborated by independent evidence.

Cheney's statements were also necessary. At trial Jeffers contended that he loved Cheney and that he would be unable to hurt her. The challenged testimony was necessary to rebut this contention. We conclude that the admission of Cheney's statements to Meck and Ramirez did not deprive Jeffers of a fair trial.

### 3. *Other "bad acts" testimony*

■ Jeffers contends that the admission of evidence of other "bad acts" denied him a fair trial. The evidence of prior bad acts was elicited through the testimony of the immunized witness Sharon Galarza. Galarza testified that Jeffers had committed other acts of violence, including assaults with drugs, knives and guns, upon Galarza, Cheney, and others. For Galarza's willingness to testify for the prosecution, the state dropped drug and prostitution charges against her. Her testimony is reported in *State v. Jeffers,* 135 Ariz. at 416–17, 661 P.2d at 1117–18.

Rule 404(b) of the Arizona Rules of Evidence, like the federal rule, forbids admission of evidence of a defendant's prior crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." The trial court instructed the jury that it could consider the evidence of bad acts to show a common scheme or plan, identity, or other similar purposes. On appeal, the Arizona Supreme Court held that the evidence of bad acts was admissible, not to show a common plan or identity, but as an explanation why the murder was not reported sooner by those who were threatened.

Jeffers argues that the evidence ought not to have been admitted, but he offers no reason why the Arizona Supreme Court's ruling was erroneous. Our review of the record discloses no ground for concluding that the admission of the evidence denied Jeffers a fair trial. *See Colley v. Sumner,* 784 F.2d 984, 990 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 142, 93 L.Ed.2d 84

(1986). Jeffers' real complaint is that the evidence was admitted under on theory by the trial court, and the jury was so instructed, while the Arizona Supreme Court held the evidence admissible on a different theory.

An erroneous instruction by itself justifies habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The trial court's instruction had no such effect. Nor did it lead to the evil that Rule 404(b) is intended to prevent. Under the trial court's instructions, the jury was not permitted to consider the evidence of bad acts to prove Jeffers' character in order to show that he acted in conformity with that character. The district court did not err in denying habeas relief.

### 4. *Appearance before the jury in jail clothing*

■ Jeffers contends that his trial was rendered unfair by his involuntary appearance before the jury in readily identifiable jail clothing. The facts surrounding the issue are not in dispute. On one occasion Jeffers appeared before the jury in his jail clothing after telling his jailor that he didn't want to wear his civilian clothing to court. In order to prevail on this issue, Jeffers must establish that the appearance in jail clothing was involuntary, *Bentley v. Crist,* 469 F.2d 854, 856 (9th Cir.1972); that a juror would recognize the clothing as issued by a jail, *United States v. Rogers,* 769 F.2d 1418, 1422 (9th Cir.1985); and that the error was not harmless. Jeffers cannot meet his burden. The choice of apparel was his, the clothing was not readily identifiable, and the jury already knew that Jeffers had been incarcerated. During voir dire the jurors were informed of Jeffers' efforts to escape from the Pima County Jail. We affirm the district court's denial of habeas relief on this ground.

### C. *Sentencing Matters*

### 1. *Denial of an impartial sentencing tribunal*

■ Jeffers contends that his constitutional rights were violated when he was

resentenced by Judge Birdsall, the judge who had originally sentenced him. After the initial sentencing, Judge Birdsall became the recipient of a "mail order blitz." The Judge filed a complaint with the postal authorities and Jeffers' name was provided to investigators as the likely source of the unwanted mailings. Jeffers admitted to his part in the mailings; the mail blitz ceased; and no charges were brought against Jeffers. At his later resentencing, Jeffers filed a motion for a new judge. An evidentiary hearing was held before a different judge and his motion was denied. The Arizona Supreme Court upheld the lower court's findings that Jeffers had failed to establish bias. It also observed that bias caused by a defendant's voluntary conduct ought not to be ground for disqualification.

The district court found that Jeffers had received a full and fair evidentiary hearing in state court and that there was, therefore, no need for an evidentiary hearing in federal court. After reviewing the evidence, the district court found that Judge Birdsall's conduct fell short of any constitutional bias. We agree. We reject Jeffers' contention that there was an appearance of impropriety that required the district court to hold an evidentiary hearing. Jeffers was not treated unfairly in the circumstances he brought into being. The district court did not err in its ruling.

2. *Application of the "especially heinous, cruel or depraved" aggravating circumstance*

█ Jeffers contends that Arizona's statute prescribing the death penalty when the murder was committed in an "especially heinous, cruel, or depraved manner" is unconstitutionally vague on its face and as applied. *See* Ariz.Rev.Stat.Ann. § 13–703(F)(6) (1982). His argument that the statute is void on its face is foreclosed by

our decision in *Chaney v. Lewis*, 801 F.2d 1191, 1194–96 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987). There, we rejected a similar challenge to the same statute, pointing out that "[a]lthough the statutory language is broad, as any murder could be considered cruel, heinous, or depraved, the Arizona Supreme Court need not construe the statute open-endedly." *Id.* at 1195. In so stating, we were echoing the plurality opinion in *Gregg v. Georgia*, 428 U.S. 153, 201, 96 S.Ct. 2909, 2938, 49 L.Ed.2d 859 (1976), where the Court upheld a Georgia statute providing a death penalty if a murder was " 'outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.' " *Id.* (quoting Ga.Code Ann. § 27–2534.1(b)(7); *see also Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976) (plurality opinion).

In *Chaney*, we also stated that "[t]he Arizona Supreme Court appears to have sufficiently channeled sentencing discretion to prevent arbitrary and capricious capital sentencing decisions." *Chaney*, 801 F.2d at 1195.[1] Finally, we held that the death sentence imposed upon Chaney was consistent with the Arizona law as established by the Arizona Supreme Court: the murder was cruel because the victim suffered greatly, and was depraved because Chaney's helpless victim (a sheriff's deputy) was shot in the back when Chaney could have made his escape without again shooting the victim. *Id.*

█ While *Chaney* establishes that the Arizona statute is not void on its face and is capable of constitutional application, it naturally does not answer the question whether the Arizona statute was constitutionally applied to Jeffers in this case. In

---

**1.** In *Tison v. Arizona*, —— U.S. ——, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), petitioners argued that Arizona had given an unconstitutionally broad construction to its aggravating factors in § 13–703. The Supreme Court held that the issue was not within the grant of certiorari, and expressed no opinion on it. *Id.* at —— n. 2, 107 S.Ct. at 1682 n. 2.

The Tenth Circuit has recently held, en banc, that Oklahoma had failed to give an adequate narrowing construction to its aggravating factor of murder that is "especially heinous, atrocious, or cruel." *Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir.1987) (en banc).

any individual application, the statute must not be so broadly construed that "[t]here is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey v. Georgia*, 446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980) (plurality opinion). After reviewing the Arizona Supreme Court cases defining "especially heinous ... or depraved," we conclude that Jeffers' death sentence violated the Eighth and Fourteenth Amendment. *See id.* at 423, 100 S.Ct. at 1762.

"Heinous" and "depraved" are inherently more difficult terms to define than is "cruel." [2] The Arizona Supreme Court has defined cruelty to include the infliction of physical and mental pain on the victim. *State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Especially cruel murders involve the senseless or sadistic infliction of great pain. *State v. Lujan*, 124 Ariz. 365, 372, 604 P.2d 629, 636 (1979). In order to establish that a murder is especially cruel, the court must find beyond a reasonable doubt that the victim was conscious and able to suffer physical pain and mental anguish. *Id.* The Arizona Supreme Court held that such evidence was lacking in Jeffers' case. *State v. Jeffers*, 135 Ariz. 404, 429, 661 P.2d 1105, 1130 (1983). Jeffers' death sentence accordingly rests on the application of the more elusive standard of murder committed in an "especially heinous ... or depraved manner."

The Supreme Court of Arizona has adopted dictionary definitions of "heinous" as "hatefully or shockingly evil; grossly bad" and of "depraved" as "marked by debasement, corruption, perversion or deterioration." *State v. Knapp*, 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977), *cert. denied*,

435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Both terms "go to the mental state and attitude of the perpetrator as reflected in his words and actions." *State v. Gretzler*, 135 Ariz. at 51, 659 P.2d at 10. In *Gretzler*, the Arizona Supreme Court set forth factors which lead to a finding of heinousness or depravity, with examples of all but one. They were:

(1) a relishing of the murder by the killer. *See State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980) (defendant murdered four people and "kept a spent bullet as a grisly souvenir of his crime"); *State v. Bishop*, 127 Ariz. 531, 622 P.2d 478 (1980) (defendant killed victim by repeated blows with hammer, tied him up, caused him to fall down mine shaft, threw rocks on victim as he lay twitching, drove away saying "Good-by Norman. I hope we never see you again").

(2) gratuitous violence against the victim. *See State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980) (defendant shot female victim twice, dragged her into another room and shot her four more times in head for no apparent reason; shot male victim three times and, after he had fallen, shot him once more in back and then kicked him repeatedly when victim was unconscious or dead).

(3) needless mutilation of the victim. *See State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981) (defendant strangled cellmate, then carved words "Bonzai" into victim's back); *State v. J.C. Smith*,[3] 131 Ariz. 29, 638 P.2d 696 (1981) (defendant mutilated female murder victims' breasts and genitalia).

---

**2.** This difficulty of definition is of major importance because Arizona, unlike some other states using similar standards, applies "heinous, cruel, or depraved" disjunctively. *State v. Richmond*, 136 Ariz. 312, 319, 666 P.2d 57, 64, *cert. denied*, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983); *see Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir.1987) (en banc) (disjunctive application of "especially heinous, atrocious, or cruel" struck down for lack of adequate narrowing construction); Rosen, *The "Especially Heinous" Aggravating Circumstance in Capital*

*Cases—The Standardless Standard,* 64 No.Car.L. Rev. 941, 980–82 (1986). Problems of definition are considerably reduced under the Arizona standard when the facts of a case suggest both cruelty and depravity. *See, e.g., Chaney*, 801 F.2d at 1195; *Woratzek v. Ricketts*, 820 F.2d 1450, 1458 (9th Cir.1987) (amended opinion).

**3.** Because there are several Arizona death penalty cases entitled *State v. Smith*, we have added initials to the Smith surnames.

(4) senselessness of the crime. *See State v. Tison*, 129 Ariz. 526, 633 P.2d 335 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982) (unnecessary murder of victims, including two-year-old child, in no position to thwart murderer's escape); *State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982) (defendant stabbed woman to death and then indiscriminately attacked her children, attempting to stab and burn them to death).

(5) helplessness of the victim.

*Gretzler*, 135 Ariz. at 52–53, 659 P.2d at 11–12. The last two factors, senselessness of the crime and helplessness of the victim, need not always lead to a finding that a murder is heinous or depraved, however. *Id.* at 53, 659 P.2d at 12; *See* also *State v. B. Smith*, 146 Ariz. 491, 503, 707 P.2d 289, 301 (1985).

Illumined as the above standard is by the case examples furnished by the Arizona Supreme Court, it seems to call for conduct or attitudes more shocking than those exhibited by Jeffers. We do not minimize Jeffers' conduct; murder is a grisly affair and this one certainly qualifies. Nevertheless, the Arizona Court on more than one occasion has emphasized that, "because most first degree murders are cruel, heinous and depraved the statutorily required inquiry with respect to imposition of the death penalty is whether the conduct was *especially* cruel, heinous or depraved." *State v. Johnson*, 147 Ariz. 395, 401, 710 P.2d 1050, 1056 (1985); *See State v. B. Smith*, 146 Ariz. at 503, 707 P.2d at 301; *State v. Lujan*, 124 Ariz. 365, 372, 604 P.2d 629, 636 (1979). That Jeffers' crime cannot meet this rigorous standard becomes even more apparent when his case is compared with those in which the Supreme Court of Arizona found that one or more of the

components of heinousness and depravity had *not* been shown.

The Supreme Court of Arizona held that Jeffers had "relished" his crime:

[W]hile Jeffers was beating the [dead] victim he called her "a bitch and a dirty snitch" and with each striking blow said, "This one is for so and so. [naming several names]. This evidences the relish with which appellant committed the murder. . . . [W]e find that the remarks made by appellant, while at the same time beating his victim, establish that the offense was committed in an especially heinous and depraved manner.[4]

*Jeffers*, 135 Ariz. at 430, 661 P.2d at 1131. Yet in *State v. R.D. Smith*, 138 Ariz. 79, 673 P.2d 17 (1983), the Arizona Supreme Court held that a defendant had not been shown to have exhibited a heinous and depraved attitude when he had repeatedly raped the murder victim and had requested the playing of a tape "We are the Champions."[5] *Id.* at 86, 673 P.2d at 24. And in *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983), a defendant who shot his victim was not shown to have demonstrated a heinous or depraved attitude when he smiled and told his companion that the victim had "squealed like a rabbit" when shot. *See also State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979) (murder not committed in heinous or depraved manner when a defendant shot victim once in back, told groaning victim "Don't worry * * * it will be over soon" and shot him again, placed victim's body in victim's van and abandoned van at airport).

Of all of the components of heinousness and depravity set forth by the Arizona Supreme Court in *Gretzler*, none is more subjective than the relishing of the crime by the defendant. When remarks made by the defendant at the time of the crime are used to establish *especial* heinousness and depravity, the distinction between ordinary

---

**4.** The facts regarding Jeffers' conduct are drawn entirely from the testimony of Van der Veer, who testified under a grant of immunity. *See State v. R.D. Smith*, 138 Ariz. 79, 87, 673 P.2d 17, 25 (1983) (Feldman, J., concurring and dissenting) (questioning death penalty imposed on strength of testimony of accomplice testifying under immunity), *cert. denied*, 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984).

**5.** The murder was found to have been especially cruel however, and the death sentence was accordingly affirmed. *Id. R.D. Smith*, 138 Ariz. at 85, 673 P.2d at 23.

and especial depravity must be clear in order to avoid arbitrary application of the standard. We conclude that the line is not clear in this case, and that Jeffers' remarks provide "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey v. Georgia,* 446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980) (plurality opinion).[6]

The other factor that the Arizona Supreme Court relied upon to support a finding of heinousness or depravity was the infliction of gratuitous violence upon the victim after death. Jeffers climbed on top of the dead victim and hit her several times in the face, while making the remarks referred to above. Here again, the level of objectionable conduct was far below that in the case the Court principally relied on, *State v. Ceja,* 126 Ariz. 35, 612 P.2d 491 (1980), and was wholly unaccompanied by mutilation in any meaningful sense of that term. We are unable to find a principled means of distinguishing the depravity of Jeffers' conduct from that in *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979) (robber in shootout shoots victim in back four times, the last time while victim is face down on floor; held not heinous or depraved), or *State v. Poland,* 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (evidence that victims, who may have been unconscious, were placed in weighted sacks and submerged in lake not sufficient to show heinousness or depravity). Nor, at the level of violence displayed by Jeffers, are we able to attach controlling significance to the fact that the victim had passed from unconsciousness to death by the time Jeffers inflicted the blows.[7] He displayed no state of mind that signifies a level of depravity greater than those found not to meet the definition of "especially heinous ... or depraved" in the cases last cited.[8]

Because we conclude that the standard of heinousness and depravity delineated in prior Arizona cases cannot be applied in a principled manner to Jeffers, his death sentence must be struck down as arbitrary. *See Godfrey,* 446 U.S. 432–33, 100 S.Ct. at 1767. In so ruling, we are mindful of the recent decision of the United States Supreme Court in *McCleskey v. Kemp,* —— U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). There the Court stated that "absent a showing that the Georgia capital punishment system operates in an arbitrary and capricious manner, McCleskey cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty." *Id.* 107 S.Ct. at 1774. In further explanation, the Court quoted *Gregg v. Georgia,* 428 U.S. at 199, 96 S.Ct. at 2937, to the effect that "[n]othing in any of our cases suggests that the decision to

---

**6.** In rejecting Jeffers' petition, the district court referred to the fact that Jeffers had forced Van der Veer to choke the dead victim while he took pictures. This fact was not relied upon as evidence of depravity by either the sentencing court or the Arizona Supreme Court. Van der Veer testified that Jeffers told her the reason he was taking the pictures was to have proof that Van der Veer had been an accomplice.

**7.** It is not clear that the Arizona Supreme Court placed importance on the fact that the victim was dead rather than unconscious at the time of the blows. In discussing the much greater level of gratuitous violence in *State v. Ceja,* the Court referred to repeated violence "although the victim was already *unconscious or* dead." *Jeffers,* 135 Ariz. at 430, 661 P.2d at 1131 (emphasis added). *But see State v. Richmond,* 136 Ariz. 312, 666 P.2d 57, *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983), in which a majority of the Court (two concurring and one dissenting Justices) held the view that twice driving over a victim would not demonstrate depravity if the perpetrator had no way of knowing that the first run was sufficient to kill. *Id.* at 323, 324, 666 P.2d at 68, 69.

**8.** The Arizona Supreme Court found it unnecessary to rule on whether Jeffers' disposing of the body in a shallow grave three days after the murder constituted further evidence of depravity. We fail to see how this action of Jeffers can be differentiated from placing a victim alive in a weighted sack and sinking the sack into a lake, *see Poland,* 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), or abandoning the victim's body in the victim's own van, *see Brookover,* 124 Ariz. 38, 601 P.2d 1322 (1979), both of which were held not to demonstrate depravity.

afford an individual defendant mercy violates the Constitution." *Id.*

Our ruling is not contrary to these principles. No acts of prosecutorial discretion or judicial clemency are involved in our comparisons. The Arizona cases upon which we rely are those establishing the minimum requirements for the aggravating factor of especial heinousness or depravity. While the Arizona Supreme Court is entitled to reweigh aggravating and mitigating factors in reviewing a capital case, *e.g., State v. Johnson,* 147 Ariz. 395, 400, 710 P.2d 1050, 1055 (1985), that de novo assessment is not the purport of its rulings holding that particular conduct falls outside the standard of heinousness or depravity. Whether the conduct qualifies as heinous or depraved is a threshold issue, and the Arizona Supreme Court's rulings on that issue are part of the process of defining the standard.[9] *See Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (1986) ("aggravating circumstances are not separate penalties or offenses but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment.") (quoting *Bullington v. Missouri,* 451 U.S. 430, 438, 101 S.Ct. 1852, 1858, 68 L.Ed.2d 270 (1981)). If the conduct is not heinous or depraved (and does not meet any of the other standards of aggravation), there is no opportunity for a discretionary act of mercy; state law then precludes the death penalty.

Ariz.Rev.Stat.Ann. § 13–703(E) (1982). To apply the standard of especial heinousness and depravity to Jeffers case when the facts do not permit it is arbitrary or capricious, and is therefore an unconstitutional application of the standard. *See Godfrey,* 446 U.S. at 428, 100 S.Ct. at 1764–65; *Gretzler,* 135 Ariz. at 50, 659 P.2d at 9 (constitutional error may occur by court straying in an individual case from an otherwise constitutionally narrow construction).[10]

We emphasize, therefore, the nature of our decision. We are not saying that Jeffers' conduct could not be punished by death under some different system of selecting penalties. Our ruling is simply that Arizona's existing standard of aggravation for murder committed in an "especially heinous ... or depraved manner," as that standard has been defined and applied by the Supreme Court of Arizona, cannot be extended to Jeffers' case without losing its ability to distinguish in a principled manner between those it condemns to death and those it does not.

█ The writ must therefore issue to vacate Jeffers' sentence on his murder conviction, subject to the state's resentencing him consistently with the Constitution within a reasonable period of time. Our ruling makes it unnecessary for us to reach additional questions Jeffers raises concerning his death penalty.[11]

---

**9.** If the Arizona Supreme Court's rulings on aggravation were simple de novo applications of the bare phrases "heinous" and "depraved," rather than being part of a process of narrowing construction, the sentencing system would probably be invalid for lack of standards offering sufficient guidance in determining who should be sentenced to death. *See Gregg,* 428 U.S. at 198, 200–03, 96 S.Ct. at 2937, *Chaney,* 801 F.2d at 1195. We consequently are reviewing the Arizona Supreme Court's definition and application of a *standard.* For that reason, we disagree with the views of the dissenting opinion that an examination of comparable Arizona cases should not be necessary, and that our review is confined to determining whether a rational factfinder could have determined Jeffers' crime to have been heinous or depraved.

**10.** Because we conclude that the application of the Arizona standard to Jeffers would violate the Eighth and Fourteenth Amendments, within

the meaning of *Godfrey* and *Gretzler,* the writ may issue under 28 U.S.C. § 2254(d)(7) against Jeffers' death sentence. Jeffers' attack, and our analysis, is on the structure of the standard as applied to Jeffers. *See Chaney,* 801 F.2d at 1194 ("since Chaney's claim raises no factual issues, his challenge to the constitutionality of the Arizona death penalty statute as applied is a purely legal question"). We are not dealing here with a simple finding of fact of the Arizona Court, which binds us if fairly supported in the record. *See id.,* at § 2254(d)(8); *Woratzeck v. Ricketts,* 820 F.2d 1450, 1458 (9th Cir.1987) (amended opinion).

**11.** Among other issues, Jeffers contends that he is entitled to jury determinations of aggravating and mitigating factors. He is not. *See Spaziano v. Florida,* 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340 (1984) (trial judge may override jury's recommendation of life imprisonment and sentence defendant to death).

## CONCLUSION

The judgment of the district court is affirmed insofar as it upholds Jeffers' convictions of murder and aggravated assault, and his sentence on the assault conviction. The judgment is reversed insofar as it upholds Jeffers' death sentence. The case is remanded to the district court with instructions to issue a writ with regard to Jeffers' death sentence, subject to the State's resentencing him within a reasonable period of time.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WILSON, District Judge (dissenting in part and concurring in part):

The majority concludes that the Arizona Supreme Court, in affirming petitioner's death sentence, adopted such a broad construction of Arizona Revised Statute § 13–703(F)(6) as to violate the Eighth and Fourteenth Amendments to the United States Constitution. Because I believe the majority is doing little more than second-guessing the Arizona Supreme Court's interpretation of facts that quite reasonably fit within the statutory definition of aggravating circumstances, I dissent.[1]

## STANDARD OF REVIEW

Generally, a federal court in a habeas corpus proceeding must accord a presumption of correctness to a state court's factual findings. 28 U.S.C. § 2254(d). This statutory presumption, however, does not apply to questions of law or to mixed questions of law and fact. *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982); *Fendler v. Goldsmith*, 728 F.2d 1181, 1191 n. 21 (9th Cir.1983). Rather, the federal court reviews such nonfactual questions *de novo*. *Chaney v. Lewis*, 801 F.2d 1191, 1194 (9th Cir.1986),

cert. denied, —— U.S. ——, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987); *Fendler*, 728 F.2d at 1191 n. 21 (federal courts are "obligated to conduct a complete and independent review of all purely legal or mixed fact and law questions raised by [a state prisoner's] habeas corpus petition").

Some federal courts in habeas proceedings have applied the presumption of correctness under § 2254(d) to state court findings of aggravating circumstances. *See Woratzeck v. Ricketts*, 820 F.2d 1450, 1459 (9th Cir.1987) (finding of "cruel, heinous, or depraved" aggravating circumstances by Arizona Supreme Court presumed correct under § 2254(d)); *Magwood v. Smith*, 791 F.2d 1438, 1449 (11th Cir. 1986) (existence of aggravating or mitigating circumstance a question of fact subject to review under § 2254(d)). These courts, however, appear to have applied the presumption without considering whether the finding of an aggravating circumstance is a question of fact or a mixed question of fact and law.

A state court conclusion that the defendant killed in a "heinous, cruel, or depraved" manner appears to be a mixed question of fact and law. *Chaney*, 801 F.2d at 1194. The court must first determine that the defendant engaged in certain conduct (e.g., beat the victim after she was dead), and then, by reference to the decisions of the state supreme court, conclude that such conduct meaningfully distinguishes the defendant from the "usual or norm of first degree murders." As a mixed question of fact and law, the state court finding is not entitled to a presumption of correctness.[2]

On the other hand, the state court's conclusion that the defendant killed in a "heinous, cruel or depraved" manner should not be subject to *de novo* review. The

---

1. I concur with the majority opinion to the extent it affirms petitioner's conviction.

2. Even if the state court finding of aggravating circumstances is *essentially* factual" so that it would be reviewed under the "clearly erroneous" standard if on direct appeal, *see United States v. McConney*, 728 F.2d 1195, 1199–1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), it is not an

"issue of fact" subject to the presumption of correctness under § 2254(d). The presumption only applies to "basic, primary or historical facts: 'facts (in the sense of recital of external events and the credibility of their narrators).'" *Fendler*, 728 F.2d at 1191 n. 21 (quoting *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)).

United States Supreme Court has stated that its review of state court findings of aggravating circumstances is "limited to the question whether they are so unprincipled or arbitrary as to somehow violate the United States Constitution." *Barclay v. Florida,* 463 U.S. 939, 947, 103 S.Ct. 3418, 3423, 77 L.Ed.2d 1134 (1983) (plurality). The Ninth Circuit has interpreted this language to support deferential habeas corpus review of aggravating circumstances. *Adamson v. Ricketts,* 758 F.2d 441, 450 (9th Cir.), *withdrawn,* 764 F.2d 1343 (9th Cir.1985), *reh'g en banc,* 789 F.2d 722 (9th Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 62, 93 L.Ed.2d 21 (1986).

Deferential review is justified by the presence of "procedural protections intended to ensure that the death penalty will be imposed in a consistent, rational manner." *Barclay,* 463 U.S. at 960, 103 S.Ct. at 3430 (Stevens, concurring). Where the state's sentencing procedures "focus discretion on 'the particularized nature of the crime and the particularized character of the defendant,' we *lawfully may presume* that [defendant's] death sentence was not 'wantonly and freakishly' imposed, and thus that the sentence is not disproportionate within any recognized meaning under the Eighth Amendment." *McClesky v. Kemp,* —— U.S. ——, ——, 107 S.Ct. 1756, 1775, 95 L.Ed.2d 262 (1987) (emphasis added).[3]

The Arizona capital sentencing process contains the appropriate checks on arbitrariness. The procedural protections include bifurcation of the penalty phase, statutorily-defined aggravating and mitigating circumstances which must be proved beyond a reasonable doubt, written findings by the sentencing body, and automatic review by the state supreme court. *See Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). On review, the Arizona Supreme compares "each death sentence with the sentences imposed on similarly situated defendants to ensure that the sentence of death in a particular case is not disproportionate." *Gregg v. Georgia,* 428 U.S. 153, 198, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976); *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51, *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). Moreover, the Arizona Supreme Court has demonstrated an ability to rationally apply the statutory aggravating and mitigating circumstances. *See State v. Gretzler,* 135 Ariz. 42, 52–53, 659 P.2d 1, 11–12, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) and cases cited therein.

Where a state's capital sentencing process is procedurally sound and responsibly managed, I believe the correct standard of review is "whether 'any rational factfinder' could have found the existence of aggravating circumstance[s]." *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality) (White, J. dissenting) (quoting *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979)).[4]

---

**3.** The Eleventh Circuit until recently held that these procedural protections not only raised a presumption that the sentence was imposed consistent with the Constitution, but foreclosed federal review:

[w]here in a capital punishment case the state courts have acted through a properly drawn statute with appropriate standards to guide discretion, federal courts will not undertake a case-by-case comparison of the facts in a given case with the decisions of the state supreme court. This rule stands even though were we to retry the aggravating and mitigating circumstances in these cases, 'we may at times reach results different from those reached in the Florida state courts.'

*Ford v. Strickland,* 696 F.2d 804, 819 (11th Cir.) (en banc) *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983) (quoting *Spinkellink v. Wainwright,* 578 F.2d 582, 604–05 (5th Cir.

1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979)) (citations omitted).

The Eleventh Circuit has since abandoned its position of total deference to state court findings of aggravating and mitigating circumstances. In *Magwood,* 791 F.2d at 1449, the court held that a federal habeas corpus court is not precluded from reviewing state fact-findings that determine the existence of a particular aggravating or mitigating circumstance. The court additionally held that such findings are issues of fact, and are presumed to be correct under § 2254(d). *Id.*

**4.** The majority does not identify the standard of review it applies in this habeas corpus proceeding, but it appears to be the "complete and independent" standard of review provided for in *Fendler,* 728 F.2d at 1191 n. 21.

CONSTITUTIONAL QUESTION

Despite the open-ended language contained in Ariz.Rev.Stat. § 13–703(F)(6), providing the penalty of death for those who commit murder in a "heinous, cruel, or depraved" manner, the Arizona death penalty statute passes constitutional muster by virtue of the narrowing constructions available through the Arizona Supreme Court. *Chaney v. Lewis,* 801 F.2d at 1195. The majority, however, holds that the Arizona Supreme Court's application of the death penalty statute to petitioner violates the constitution.

### A. Analysis Under the "Rational Factfinder" Standard of Review

The Supreme Court of Arizona has set forth in considerable detail those factors which support a finding that a murder was committed in an "especially heinous, cruel, or depraved" manner. *See Gretzler,* 135 Ariz. at 51–53, 659 P.2d at 10–12. In particular, the Arizona Supreme Court has identified the defendant's relishing of the killing and the infliction of gratuitous violence as two bases for finding a heinous or depraved attitude. *Id.* Given the parameters identified by the Arizona Supreme Court, I believe a "rational factfinder" could have found the existence of aggravating circumstance § 13–703(F)(6).

The Arizona Supreme Court found that Jeffers had relished the killing:

[W]hile Jeffers was beating the [dead] victim he called her "a bitch and a dirty snitch" and with each striking blow said, "This one is for so and so." [naming several names]. This evidences the relish with which appellant committed the murder.... [W]e find that the remarks made by appellant, while at the same time beating his victim, establish that the offense was committed in an especially heinous and depraved manner.[5]

*State v. Jeffers,* 135 Ariz. 404, 430, 661 P.2d 1105, 1131, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). This

is a rational finding based on petitioner's words and actions.

The Supreme Court of Arizona additionally found that Jeffers had inflicted "gratuitous violence." *Id.* The record shows that Jeffers "climbed on top of the dead victim and hit her in the face several times which eventually resulted in additional wounds and bleeding." *Id.* Based on these facts, the Arizona Supreme Court could rationally find that the petitioner inflicted gratuitous violence: "In short, it was this additional violence, over and above that which was necessary to carry out the defendant's criminal intent, that in effect distinguishes the [defendant's murder] from the 'usual or the norm' of first degree murders." *State v. Ceja,* 115 Ariz. 413, 417, 565 P.2d 1274, 1278 (1977). In light of the factual grounds for finding that the petitioner "relished" the act of killing and inflicted "gratuitous violence," the Arizona Supreme Court could rationally conclude that Jeffers' committed murder in an "especially heinous, cruel, or depraved manner."

### B. Analysis Under the De Novo or "Independent" Standard of Review

The majority acknowledges that the Arizona Supreme Court has adopted standards which narrow the class of first degree murderers who may be put to death, but concludes that a finding of aggravating circumstances under § 13–703(F)(6) "seems to call for conduct or attitudes more shocking than those exhibited by Jeffers." *Ante* at 484. In holding that Jeffers' conduct is not *sufficiently* objectionable, this Court simply substitutes its judgment for the judgment of the Arizona Supreme Court. Nothing in the Eighth or Fourteenth Amendments permits this result.

The majority's reliance on *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality) is misplaced. There the Georgia Supreme Court affirmed a death sentence without articulating how

---

**5.** The Arizona Supreme Court's findings of historical facts, such as what Jeffers said and did at the time of the killing, are presumed to be correct under 18 U.S.C. § 2254(d). The majori-

ty questions the strength of Van der Veer's testimony, see *ante* at 488 n. 4, but in no way shows that the state court findings are not "fairly supported by the record." 18 U.S.C. § 2254(d).

the defendant's actions differed from the norm of first degree murders. The United States Supreme Court reversed the death sentence, finding that it had been imposed in a "standardless and unchanneled" fashion. *Id.* at 429, 100 S.Ct. at 1765. As Justice Marshall wrote, it was not a question of whether the facts supported the jury's finding:

> "As in any case raising issues of vagueness, the question is whether the court below has adopted so ambiguous a construction of the relevant provision that the universe of cases it comprehends is impermissibly large, thus leaving undue discretion to the decisionmaker and creating intolerable dangers of arbitrariness and caprice."

446 U.S. at 420 n. 1, 100 S.Ct. at 1762 n. 1 (concurring opinion).

The Arizona Supreme Court, unlike its counterpart in *Godfrey,* "has gone to great lengths to precisely define and correctly apply Ariz.Rev.Stat. § 13–703(F)(6)." *Adamson v. Ricketts,* 758 F.2d at 451. In finding that Jeffers committed his crime in a heinous or depraved manner, the Arizona Supreme Court identified the specific conduct which, in *its* judgment, set this murder apart from other first degree murder: (1) He climbed on to his dead victim; (2) repeatedly struck her in the face so as to draw blood; (3) called her a "bitch and a dirty snitch," and, (4) with each blow, said, "This one is for so and so." *See State v. Jeffers,* 135 Ariz. 404, 430, 661 P.2d 1105, 1131, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). The Arizona Supreme Court further explained how petitioner's conduct satisfied § 13–703(F)(6) under existing Arizona precedent. By repeatedly striking his victim in the face af-

ter she was dead, Jeffers inflicted "gratuitous violence," and by the remarks he made while inflicting this additional violence, Jeffers showed he "relished" the killing. *Id.*

The majority attacks this finding not on the basis that it is "standardless and unchanneled" under *Godfrey,* but that it does not comport with other decisions of the Arizona Supreme Court. The majority's conclusion that § 13–703(F)(6) requires "conduct or attitudes more shocking than those exhibited by Jeffers," *ante* at 484, represents one possible reading of the Arizona death penalty statute and Arizona precedent, but the majority fails to show that this reading is constitutionally required. The Arizona Supreme Court may constitutionally impose the death sentence on petitioner provided the court consistently applies the death penalty statute to other defendants in Jeffers' position. The fact that Jeffers' conduct may lie close to the line separating ordinary first degree murders from "heinous, cruel, or depraved" killings—and could be interpreted to fall below the threshold for imposing the death penalty under current Arizona case law—does not give rise to a constitutional violation absent inconsistent determinations by the Arizona Supreme Court.[6]

In an effort to show that the Arizona Supreme Court's decision in *Jeffers* was so unprincipled that it violated the constitution, the majority undertakes a selective review of other Arizona death penalty cases. The majority emphasizes those cases in which the defendant's conduct seemingly was more objectionable than Jeffers' but the Arizona Supreme Court did not find the defendant killed in a "heinous, cruel, or depraved" manner.[7] None of the

---

[6]. The majority in effect challenges the constitutionality of any capital sentencing system which recognizes an aggravating circumstance as open-ended as A.R.S. 13–703(F)(6). Inevitably, courts must draw difficult lines between ordinary first degree murder and those murders which are committed in an "especially heinous, cruel, or depraved" manner. But the constitution is satisfied where state courts draw lines based on "*rational* criteria that narrow the decisionmaker's judgment as to whether the circumstances of a particular defendant's case meet the threshold [below which the death penalty can-

not be imposed]." *McClesky v. Kemp,* —— U.S. at ——, 107 S.Ct. at 1774 (emphasis added).

[7]. These cases are relevant benchmarks to the extent that similar or worse conduct did not result in a finding of aggravating circumstances. They help to answer a threshold question: What is the minimum level of objectionable conduct required for a finding of aggravating circumstances under A.R.S. § 13–703(F)(6)? The decision in *Jeffers* is not undermined by those cases in which the Arizona Supreme Court found aggravating circumstances based on conduct more

cited cases, however, involved conduct similar to Jeffers', and little can be distilled from broad comparisons.

In *State v. R.D. Smith*, 138 Ariz. 79, 673 P.2d 17 (1983), the Arizona Supreme Court found that the only evidence of a heinous or depraved mind was the uncorroborated testimony of a codefendant that Smith, the defendant, had requested the tape "We Are The Champions" be played at some stage during the kidnap-rape-murder. The court found this to be insufficient evidence of heinousness or depravity, particularly in light of the defendant's suicide attempt, which was motivated in part by remorse. *Id.* at 86, 673 P.2d at 24. The finding in *R.D. Smith* is not inconsistent with the Arizona Supreme Court's finding that Jeffers "relished" the killing. Unlike the defendant in *R.D. Smith*, Jeffers made statements that directly captured the gusto with which he killed, at the time he killed.[8]

In *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983), the court found insufficient evidence of a heinous or depraved attitude where the defendant, who was organically brain-damaged and highly impressionable, smiled while recounting that the victim "squealed like a rabbit" when shot. The court concluded that "[w]hatever statements Graham may have made about the killings are more likely attributable to his immaturity, nervousness and need to impress his peers than to a hardened attitude towards the death of another." *Id.* at 212, 660 P.2d at 463. No such charitable interpretation can be given to the statements of Jeffers, made while repeatedly striking his dead victim in the face.

In *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979), the Arizona Supreme Court found that the defendant had not committed murder in an especially "heinous, cruel, or depraved" manner where he shot the victim in the back, told the groaning victim "Don't worry ... it will be over soon" and shot the victim again. The court found that the defendant's words and actions, all in furtherance of a deliberate plan to "rip-off" a drug dealer and, in the process, impress other narcotics traffickers, failed to adequately distinguish the crime from other first degree murders. *Id.* at 40–41, 601 P.2d at 1324–25. Again, nothing in *Brookover* shows the Arizona Supreme Court inconsistently applied the death penalty statute to petitioner. Jeffers did not commit "cold and deliberate homicide" as in *Brookover;* rather, his words and actions show that he "relished" taking the life of a "dirty snitch."

The majority cites two additional cases to show the Arizona Supreme Court inconsistently found Jeffers to have inflicted gratuitous violence. Both cases are readily distinguishable.

In *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), a robbery victim engaged the defendants in a shoot-out, and was shot four times in the back, the last time while face down on the floor. In finding that the killing was not committed in an especially "heinous, cruel, or depraved" manner, the Arizona Supreme Court looked to the victim's role in bringing about his own death. *Id.* at 447–48, 586 P.2d at 1260. No such consideration is present here.

Likewise, *State v. Poland*, 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), fails to be instructive. There the court's inability to ascertain the exact circumstances of the victims' deaths precluded any finding that the murders were heinous or depraved. *Id.* at 405, 698 P.2d at 200. Nothing in *Poland* suggests that Jeffers' words and actions, established firmly on the record, fail to show depravity or heinousness.

## CONCLUSION

The foregoing case-by-case analysis should be unnecessary. As a federal habe-

---

objectionable than Jeffers'. Such cases say very little about whether Jeffers' conduct meets the threshold below which the death penalty cannot be imposed.

8. It is not clear that the defendant in *R.D. Smith* requested the tape be played while killing the victim, as opposed to raping her. Under Arizona case law, the defendant must "relish the murder" for § 13–703(F)(6) to be satisfied. *See Gretzler*, 135 Ariz. 52, 659 P.2d at 10.

as corpus court, we offer a limited forum for petitioner's collateral attack on his state court conviction and sentence. Our duty is to ensure that the petitioner is not being held in violation of the constitution. Our role does not extend to re-writing the law of Arizona to comport with our own interpretation of Arizona precedent. Where state courts are responsibly and consistently interpreting state death penalty statutes which have been held to be constitutional, our review should be limited to whether "any rational factfinder" could have found the existence of aggravating circumstances.